# EXHIBIT A

## Amended Complaint

R&S 2356337_1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| BARBARA B. STALZER, chapter 7 trustee for the estate of Jeffrey Victor Morse, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN MERCHANT, INC., <br> CNS GLOBAL ADVISORS, and <br> MERCHANT HOUSE INTERNATIONAL LTD., <br><br> Defendants. | Case No. 1:19cv00023 |

## SECOND AMENDED COMPLAINT

COMES NOW Barbara B. Stalzer, Chapter 7 Trustee for Jeffrey Victor Morse, Case No. 19-40142, pending in the United States Bankruptcy Court for the Western District of North Carolina, Shelby Division, substituted Plaintiff herein, by and through her duly authorized counsel, and provides the Court with this Amended Complaint against the Defendants and states as follows:

### PROCEDURAL BACKGROUND

1. Jeffrey Victor Morse (hereinafter "Morse") filed bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on April 17, 2019 and Barbara B. Stalzer was appointed as his Chapter 7 Trustee. At the time Morse had a complaint pending in the Circuit Court of Bristol, VA, Case

No. CC19-080284-00, alleging a quantum meruit claim for approximately $90,000.00 for consulting services performed at the direction of and for the benefit of Defendants.

2. On or about May 30, 2019, both CNS Global Advisors (hereinafter "CNS") and Merchant House International LTD. (hereinafter "Merchant House"), filed Demurrers and Answers. Merchant House also filed a Motion to Quash and to Dismiss for lack of Subject Matter Jurisdiction.

3. Between May 29, 2019 and July 1, 2019, the case was removed to the United States District Court for the Western District of Virginia, Abingdon Division, (now case No. 1:19CV00023), where jurisdiction now lies.

4. On July 3, 2019 a Suggestion of Bankruptcy Motion for Stay was filed in this case.

5. By operation of law, a Bankruptcy Trustee succeeds to all the property interests, including claims, of the debtor. The Trustee thus becomes the real party in interest to pursue the claims of Morse set forth in his original complaint.

## BACKGROUND AND PARTIES

6. Morse was for thirty-five years the city manager of Valdese, North Carolina, retiring in July 2015. After his retirement Morse became a consultant for various entities (both private and governmental) to utilize his knowledge of city, county, and federal governments grant programs, and contacts with those administering the grants, to aid the entities in accessing grant funds. The funds would assist qualified businesses to benefit local economies.

7. Morse is a resident of Morganton, North Carolina.

8. The Defendant, CNS Global Advisors (hereinafter "CNS"), is a consulting firm/financial advising company that provides services to both foreign and domestic companies and has its headquarters in Washington, D.C., and does business in Virginia.

9. The Defendant, American Merchant Inc. (hereinafter "American Merchant"), is a textile manufacturer that is a subsidiary of Merchant House International, Ltd. and has its headquarters in Bristol, Virginia, which does business in Bristol, Virginia.

10. The Defendant, Merchant House International, Ltd. (hereinafter "Merchant House"), is an international company that sources, produces and sells footwear, home textiles, seasonal decorations and gifts and is incorporated in Bermuda with its headquarters in Hong Kong, owns the defendant American Merchant and does or did business in Virginia.

**MORSE CONSULTING WORK FOR DEFENDANTS**

11. Morse, on or about August 23, 2017, was recruited by Leonhardt Environmental, P.C., an environmental engineering firm headed by Derr Leonhardt (hereinafter "Leonhardt"), to acquire grants to set off the costs of building a wastewater pretreatment plant at American Merchant's textile manufacturing facility. Leonhardt had been recruited and employed by CNS on behalf of American Merchant. Morse became familiar with Leonhardt during his work as city manager, and continued to work with Leonhardt in his consulting efforts after his retirement from the city manager position.

12. In his previous consulting business in association with Leonhardt, payment arrangements for Morse were typically 5% (five percent) of the total grant, which could be paid out of grant funds, or separately, if the grant applications were successful. Also typically, the payment arrangements for Morse' consulting services were not in writing.

13. Leonhardt was initially enlisted by Merchant House, American Merchant or CNS to assist in the environmental assessment for a wastewater pretreatment facility to be part of a textile manufacturing business, proposed to be located in Bristol, Virginia.

14. Upon information and belief, at some point either prior to or contemporaneously, Merchant House or American Merchant had contracted with CNS, to locate a suitable building for the textile plant to manufacture towels. Jim Williams was the primary person with CNS tasked with this assignment. CNS then contracted with Leonhardt Environmental, who subcontracted to Morse. During this time period Jim Williams( hereinafter "Williams") met Jeffrey Morse and Williams was made aware that Morse was working to obtain grants for American Merchant and/or Merchant House.

15. On or about September 29, 2017 Morse attended a meeting at or near American Merchant's manufacturing plant location in Bristol, Virginia. His involvement in the project was described in the meeting minutes as follows:

> A consultant specializing in acquiring grant money for new industrial projects met with our team to discuss potential grants from multiple sources including TVA. The consultant has begun the process of contacting grant agencies. A report on the nature and amount of such grants is expected by October 11, 2017.

As of this meeting, CNS had looked into only two grant programs.

16. On or about October 11, 2017 at a meeting taking place at the manufacturing facility at or near Bristol, VA, Morse presented several options for grant proposals including Appalachian Regional Commission (ARC), Tennessee Valley Authority (TVA) and the Economic Development Association (EDA). At this meeting, Morse also asked for and received permission to contact the city of Bristol, VA and its Community Development department ("Bristol") to gauge their interest in being an applicant to receive grants on behalf of American Merchant. Because of work Morse provided in writing various grant applications in conjunction

with Bristol, Bristol eventually applied for and received grant funding for cost assistance for American Merchant's textile plant and required wastewater pretreatment facility. Williams had knowledge of this meeting and knew what Morse was going to do.

17. Beginning in October 2017 and continuing through January 2018, Morse worked to acquire grants from ARC, TVA and EDA. During this entire time period Jim Williams of CNS Global was constantly monitoring Morse's efforts and when Leonhardt Environmental, P.C. was phased out of the planning process on or about January 2, 2018, Morse continued his work. By this time he was an essential part of the team working on various grant proposals to benefit Merchant House, American Merchant and the area around Bristol, Virginia. Jim Williams had knowledge of these efforts through numerous emails, such as the emails of October 13, 17th and 23rd of 2017. On October 24, 2017 Williams was informed of Morse's contacts with TVA toward obtaining grants.

18. Following the removal of Leonhardt Environmental, P.C. from the team of consultants on or about January 2, 2018 by CNS, American Merchant and/or Merchant House, Morse continued to work on the acquisition of grants at the request of CNS on behalf of American Merchant and Merchant House. His services were finished about May 2, 2018. The work by Plaintiff was done with ongoing assurances from representatives of CNS and American Merchant that he would be compensated for his efforts. The details of all of this work, which was known to CNS and American Merchant, included numerous emails. Among these was his email of October 25, 2017 which summarized his work on all of his projects. On October 26, 2017 Williams and American Merchant got copies of the grant application for the Appalachian Regional Commission (" ARC")grant that Morse had prepared.

19. Between September 2017 and May 2018 Plaintiff made numerous trips from Morganton, North Carolina to Bristol, Virginia on behalf of defendants as part of his ongoing efforts to obtain grant funding for a wastewater pretreatment plant. These trips, Morse's grant writing, communications with Bristol, Virginia staff, and contacts at the grant making entities required a large amount of time and expertise, all done at the special instance and request of Defendants.

20. Specifically both Williams and American Merchant asked for Morse's assistance. For example Williams complained to Morse that Bristol was not submitting grant applications. Morse took care of it. On November 9, 2017 Williams asked Morse to explain the initials on some of the grants that Morse was seeking. This shows that CNS not only knew of Morse's work but depended upon his expertise. Morse's work continued throughout the Fall and Winter of 2017 and 2018 with numerous emails going to Williams to keep him informed on all of the status of the grant applications. On the ARC grant process, not only did the Plant Manager have communication with Morse about the grant process, but a Vice President of either American Merchant and/or Merchant House also communicated about the grant process.

Upon information and belief, Morse' efforts were instrumental in the approval by the ARC, on or about March 3, 2018, of a $500,000.00 grant for the City of Bristol, Virginia for the funding of a wastewater pretreatment plant to be built by American Merchant.

21. Upon information and belief, Morse's grant writing, contacts and expertise were critical and instrumental in the successful application for a grant from the TVA for an electrical energy credit in the amount of $1,300,000.00 for the energy needs of the Merchant House wastewater pretreatment plant. In the grant application efforts Morse worked with both the TVA and Bristol Virginia Utility.

22. Morse's fee for his successful efforts would typically be paid $90,000.00 or 5% of the total grants.

23. Between early 2018 and May, 2018, on several occasions Morse contacted Jim Williams of CNS, Morse's primary contact with the Defendants, concerning his fees and payment thereof. It was not until October, 2018 that Morse was informed he would not be paid, of course, only after the grant applications were successful. This default on the part of Defendants created serious financial hardship for Morse.

During the eight month period that Morse provided services, the Chief Executive Officer of Merchant Capital came to the United States and met with Morse at a social event. During that event she inquired as to what he was doing and she was made aware of his efforts on behalf of American Merchant to obtain grants for them.

23. Throughout Morse's work, over an eight month period, Williams made repeated promises that Morse would be compensated. The efforts of Morse coupled with the continued assurances from the Defendants that Morse would be compensated for those efforts is behavior by both parties indicative that an agreement was in place. Therefore, the court should infer an implied-in-fact contract. In the alternative, the Defendants are estopped by their conduct and silence from denying the existence of a contract.

24. Further, Morse conferred a benefit upon the Defendants by devoting his time, effort, and expertise at the continued request and special instance of the Defendants. There was a reasonable expectation that Defendants would pay Morse and the Defendants knew or should have known of this expectation of payment. Under the principles of quantum meruit and unjust enrichment, allowing the Defendants to retain the benefits as set forth above without appropriate compensation to Morse would be profoundly inequitable.

25. Further, the Defendants were enriched through Morse's work and expertise in the amount of $1.8 million in grants that were obtained in an expedited manner. This could have only been achieved by someone possessing Plaintiff's specific skillset, professional network and experience in grant writing.

### FIRST CLAIM FOR RELIEF: BREACH OF IMPLIED CONTRACT

26. Plaintiff hereby adopts by reference and reasserts all of the preceding allegations of this Amended Complaint.

27. The Plaintiff alleges that a contract may be formed by inference by manifesting consent, including silence, based upon the course of performance, course of dealing or usage of trade. Based on the circumstances and acts of the parties, Plaintiff's Debtor and Defendants had an implied contract for Plaintiff Debtor's consulting work whereby Plaintiff's Debtor would work to procure grants for the Defendants in exchange for a fee of 5% of the grants procured.

28. Defendants have not paid Plaintiff's Debtor for his consulting services thereby breaching the contract.

29. Defendants' breach of contract has caused damage to Plaintiff's Debtor in the amount of at least $90,000.00.

### SECOND CLAIM FOR RELIEF: UNJUST ENRICHMENT AND RESTITUTION

30. Plaintiff hereby adopts by reference and reasserts all of the preceding allegations of this Amended Complaint.

31. Plaintiff Debtor's actions in procuring the grants for the Defendants conferred a benefit on the Defendants. The Defendants knew of Morse's work and accepted this benefit. The principals Merchant Capital and American Merchant both received benefits from Morse's work.

32. The Plaintiff's Debtor had a reasonable expectation of payment for his consulting work and the Defendants should reasonably have expected to pay for this work.

33. Defendants were unjustly enriched and have caused damage to Plaintiff's Debtor in the amount of at least $90,000. The Defendant should pay restitution to compensate Morse for his acts.

**WHEREFORE**, pursuant to the principles of implied contract, quantum meruit, restitution and unjust enrichment, Plaintiff prays that judgment be entered jointly and severally against Defendants in the amount of $90,000.00 plus costs and interest from the date of the filing of this complaint, and that the Court grant such other relief as may be appropriate.

This 31st day of January, 2020.

                                                      Barbara Stalzer, Trustee
                                                    By Counsel

/s/ Robert T. Copeland
Robert T. Copeland, VSB 14575
Scot S. Farthing, Attorney At Law, P.C.
Post Office Box 1296
Abingdon, VA 24212
276-628-9525
276-628-4711 (fax)
robertc@sfarthinglaw.com
Counsel for Plaintiff

CERTIFICATE OF SERVICE

      I Robert T. Copeland do hereby certify that on February ___,2020, a copy of the AMENDED COMPLAINT was served upon counsel for the Defendants, Steven R. Minor, by ECF and mailed to him by first class mail at his address of 110 Piedmont Ave, Suite 300, Bristol, VA 24201.

                                                    /s/Robert T. Copeland