IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| BARBARA B. STALTZER, CHAPTER 7 TRUSTEE FOR ESTATE OF JEFFREY VICTOR MORSE, </br></br>       Plaintiff,</br></br>v.</br></br>AMERICAN MERCHANT, INC., ET AL.,</br>       Defendants. | Case No. 1:19CV00023</br></br>**OPINION AND ORDER**</br></br>By: James P. Jones</br>United States District Judge |

*Robert T. Copeland*, Scot S. Farthing, Attorney at Law, P.C., Abingdon, Virginia, for Plaintiff; *Steven R. Minor*, Elliot Lawson & Minor, Bristol, Virginia, for Defendants.

In this civil case invoking the court's diversity jurisdiction, the plaintiff has brought claims for quantum meruit and unjust enrichment against the defendants alleging that he was not paid for consulting services that he was hired by a non-party subcontractor to perform. The defendants have moved to dismiss for failure to state a claim. For the reasons that follow, the motions will be granted.

I.

The Second Amended Complaint (hereinafter "Complaint") alleges the following facts, which I must accept as true for purposes of deciding the motions to dismiss. Jeffrey Morse, a retired government employee, worked as a consultant to

help businesses acquire government grants. American Merchant, Inc. (American Merchant), a textile company, hired CNS Global Advisors (CNS) to locate a plant to manufacture towels. CNS subcontracted with Leonhardt Environmental, P.C. (Leonhardt) to conduct an environmental assessment for a wastewater pretreatment facility for the plant. Leonhardt then hired Morse to acquire grants to subsidize the cost of the wastewater pretreatment facility. Leonhardt and Morse did not reduce to writing their agreement for Morse's compensation, as was their custom, but Morse was usually paid a percentage from the total funds awarded.

Morse was recruited as a consultant to the subcontractor, Leonhardt, on or about August 23, 2017. Morse's consultation services caused him to interact directly with American Merchant and CNS during the term of Leonhardt's subcontract. For example, meeting minutes indicate that CNS and American Merchant expected Morse to provide a report on possible grants by October 11, 2017. Morse prepared that report and recommended that American Merchant apply for funds from the Appalachian Regional Commission (ARC) and the Tennessee Valley Authority (TVA), among other sources. Morse emailed CNS and American Merchant throughout October 2017 to inform them of his efforts to obtain funding. Jim Williams was the primary representative of CNS and "constantly monitored" Morse's work. Compl. ¶ 17, ECF No. 25. Morse completed an application for the

ARC grant and American Merchant and CNS received copies of it on October 26, 2017.

The Complaint is less precise about what services Morse performed after Leonhardt's subcontract ended on January 2, 2018, and any direct interactions that he had with American Merchant or CNS after that date. The plaintiff alleges that "Morse's work continued throughout the Fall and Winter of 2017 and 2018" and during that time Morse kept Williams informed of his efforts through email. Compl. ¶ 20, ECF No. 25. The Complaint also states that Morse made several trips to Bristol, Virginia "[b]etween September 2017 and May 2018" to obtain grant funding. *Id*. at ¶ 19.

American Merchant eventually obtained some of the government funding that Morse had worked to procure. The TVA awarded American Merchant a $1.3 million energy credit for its wastewater pretreatment facility. Also, the ARC awarded a $500,000 grant to the City of Bristol to subsidize the facility. Although CNS and American Merchant representatives assured Morse that he "would be compensated for his efforts," Morse was never paid. *Id*. at ¶ 18. He contends that his "typical" fee would be five percent of the grant funds received, which fee in this case he calculates to be $90,000. *Id.* at ¶ 22.

The plaintiff asserts claims under Virginia law against American Merchant and CNS for quantum meruit and unjust enrichment.[1] The defendants have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) in which they argue, inter alia, that the Complaint does not plausibly allege that an implied contract was formed with respect to Morse and American Merchant or CNS. CNS also argues that any work done before Leonhardt was terminated was done at the insistence of Leonhardt. The defendants further contend that the unjust enrichment claim must be dismissed for several reasons. American Merchant argues that the Complaint does not plausibly allege that Morse conferred a benefit on it since the ARC grant was awarded to the City of Bristol and a credit on future electricity purchases is not a cognizable benefit. CNS argues that the Complaint fails to allege that Morse conferred a benefit on it because CNS did not receive any public funds. Both defendants maintain that the Complaint has not plausibly alleged that they should have been expected to pay Morse. The motions have been fully briefed and are ripe for decision.[2]

---

[1] Morse himself initially filed this action, but his Chapter 7 Trustee in Bankruptcy thereafter moved for an order of substitution, which motion was granted.

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not significantly aid the decisional process.

II.

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court's "inquiry is to determine whether the facts alleged in the plaintiff's complaint are legally sufficient to state a claim upon which relief can be granted." *Fessler v. IBM Corp.*, 959 F.3d 146, 151–52 (4th Cir. 2020). "Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, [the court] assume[s] the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Id.* (citation omitted). "To survive a motion to dismiss, [the court] require[s] 'only enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III.

Quantum meruit compensates a plaintiff for the value of his services, while unjust enrichment recovers a defendant's wrongful gain. *T. Musgrove Constr. Co. v. Young*, 840 S.E.2d 337, 341 (Va. 2020). The Virginia Supreme Court has recently disentangled these "easily [ ] conflated" theories. *Fessler*, 959 F.3d at 156 (quoting *T. Musgrove Constr. Co.*, 840 S.E.2d at 340). "With the benefit of the Virginia Supreme Court's clarification," the Fourth Circuit applied these principles in *Fessler*

this year when it considered whether a district court properly dismissed claims for quantum meruit and unjust enrichment. *Id.* at 157.

Quantum meruit provides that "[w]here service is performed by one, at the instance and request of another, and . . . nothing is said between the parties as to compensation for such service, the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefor." *T. Musgrove Constr. Co.*, 840 S.E.2d at 341 (quoting *Mongold v. Woods*, 677 S.E.2d 288 (Va. 2009)). "The measure of recovery for *quantum meruit* . . . is the reasonable value of the services provided." *Id.* at 341. Quantum meruit requires an implied-in-fact contract, where "the typical requirements to form a contract are present, such as consideration and mutuality of assent." *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 772 S.E.2d 290, 295 (Va. 2015). Unlike express contracts, for implied-in-fact contracts the parties' *conduct* is "the manner in which mutuality of assent is established" *id.*, and "some of the terms and conditions are implied in law from the conduct of the parties," such as "definite compensation," or an "agreed upon salary." *Marine Dev. Corp. v. Rodak*, 300 S.E.2d 763, 766 (Va. 1983). Thus, "quantum meruit is available when (1) the parties contract for work to be done, but the parties did not agree on a price, (2) the compensation mentioned is too indefinite, (3) there is a misunderstanding as to the price to be paid, or, (4) in some instances, the contract is void and of no effect." *T. Musgrove Constr. Co.*, 840 S.E.2d at 341.

On the other hand, unjust enrichment applies when "(1) 'plaintiff conferred a benefit on defendant; (2) defendant knew of the benefit and should reasonably have expected to repay plaintiff; and (3) defendant accepted or retained the benefit without paying for its value.'" *Fessler*, 959 F.3d at 157 (quoting *T. Musgrove Constr. Co.*, 840 S.E.2d at 341) (alterations omitted). "The measure of recovery for unjust enrichment is limited to the benefit realized and retained by the defendant." *T. Musgrove Constr. Co.*, 840 S.E.2d at 341. Unlike quantum meruit, unjust enrichment arises from "quasi contracts, or 'contracts implied in law,' in which the assent of the parties is immaterial," and "the promise [to pay] is implied from the consideration received." *Marine Dev. Corp.*, 300 S.E.2d at 766 (internal quotation marks and citation omitted). Typical examples of unjust enrichment involve a payment or overpayment made due to a mistake of fact, *Cent. Nat'l Bank of Richmond v. First & Merchs. Nat'l Bank of Richmond*, 198 S.E. 883 (Va. 1938), or the acceptance of services without a contract for those services, *Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 495 S.E.2d 478 (Va. 1998). While "quantum meruit requires a request for services, unjust enrichment does not." *Fessler*, 959 F.3d at 157.

The Complaint does not state a claim for quantum meruit under Virginia law because it does not plausibly allege conduct evidencing an implied-in-fact contract between the parties, or that Morse performed consulting services that American

Merchant or CNS requested. Nor does the Complaint state a claim for unjust enrichment under Virginia law because it does not plausibly allege that Morse conferred a benefit on CNS, or that either defendant reasonably expected to pay him.

A.

The Complaint does not allege facts to support the first element of a quantum meruit claim that Morse performed consulting services "at the instance and request" of the defendants. *T. Musgrove Constr. Co.,* 840 S.E.2d at 341. Rather, the factual allegations suggest that Morse worked to obtain government funding at Leonhardt's insistence from August 23, 2017 until at least January 2, 2018, while he was within Leonhardt's employ. This is indicated in the very first sentence of the facts section of the Complaint, which reads "Morse . . . was recruited by Leonhardt Environmental, P.C. . . . to acquire grants to set off the costs of building a wastewater pretreatment plant at American Merchant's textile manufacturing facility." Compl. ¶ 10, ECF No. 25. Thus, Morse's work during October and November 2017 to present a report of possible sources of funding, prepare the ARC grant application, and advise Williams about initials on some grants, were performed pursuant to Morse's agreement with Leonhardt and were done at Leonhardt's request.

Additionally, the Complaint does not allege any conduct or interaction between Morse and the defendants outside the scope of Leonhardt's subcontract to infer an implied-in-fact contract between the litigants. Morse's report, grant

application, and advice to Williams were pre-existing legal obligations flowing from Morse's agreement with Leonhardt and not consideration for an implied-in-fact contract between Morse and the defendants. *See* 17A Am. Jur. 2d Contracts § 131 (2020) ("A promise to do that which the promisor is already legally bound to do, or the performance of an existing legal obligation, does not usually constitute consideration, or sufficient consideration, for a contract."). Also, assuring Morse that he "would be compensated" does not mean that the *defendants* would pay him or imply mutual assent that the defendants were bound to do so. Compl. ¶ 18, ECF No. 25. Moreover, the conclusion that "[f]ollowing the removal of Leonhardt . . . on or about January 2, 2018 . . . Morse continued to work on the acquisition of grants at the request of CNS on behalf of American Merchant," *id.*, is "not entitled to the assumption of truth" because there are no factual allegations to support it. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This assertion stands in contrast to the detailed allegations of Morse's work during the term of Leonhardt's subcontract. Without more, this conclusion is insufficient to plausibly allege the existence of an implied-in-fact contract. *See Id*. ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

To be sure, an implied-in-fact contract can "encompass specific portions of previously expired express contracts executed by a different set of parties." *Spectra-4, LLP*, 772 S.E.2d at 297. But the "implied-in-fact contract may include only the

-9-

particular terms of a previously expired express contract which the parties' subsequent actions, embodying their mutuality of assent, specifically encompass." *Id*. at 296.  Here, the existence and terms of any surviving implied-in-fact contract between Morse and the defendants that incorporated the expired subcontract between CNS and Leonhardt must be discerned from the parties' conduct.  *Id*.; *Marine Dev. Corp.*, 300 S.E.2d at 766.  But the Complaint does not allege what work Morse did for the defendants after Leonhardt's subcontract ended that could manifest mutual assent to incorporate terms of the subcontract.  The Complaint's vague references to Morse's "ongoing efforts" "[b]etween September 2017 and May 2018" and "throughout the Fall and Winter of 2017 and 2018," Compl. ¶ 19, 20, ECF No. 25, are not sufficient to infer mutual assent, terms, or conditions of an implied-in-fact contract.

Morse's claim is unlike a line of quantum meruit cases where the parties' conduct indicated agreement that the defendant would pay the plaintiff *some* compensation in exchange for services but the parties had not "agreed upon . . . a definite salary."  *Marine Dev. Corp.*, 300 S.E.2d at 766 ("Rodak performed services for which no definite compensation was agreed upon."); *see Hendrickson ex rel. Meredith v. Meredith*, 170 S.E. 602, 603 (Va. 1933) (Parties agreed that defendant would pay plaintiff $2.50 per week in exchange for plaintiff's domestic services and the "only one provision . . . in dispute" was whether defendant would also convey a

life estate.); *Fessler*, 959 F.3d at 158 (stating that "Fessler's claim for quantum meruit is sufficient because of — not in spite of — the lack of a meeting of the minds with regard to the exact payment he would receive for his work"). But here, the Complaint does not point to conduct from which to infer mutual assent that the defendants would pay Morse anything for his services. Morse cannot recover under a quantum meruit theory against these defendants.

B.

The Complaint also fails to state a claim for unjust enrichment against CNS because it does not allege facts to support the first element, that Morse "conferred a benefit" on CNS. Compl. ¶ 31. ECF No. 25. The Complaint does not explain how the purported benefit — $1.8 million in government funds and credits to subsidize American Merchant's textile plant — inured to CNS.

Moreover, the Complaint does not adequately allege an unjust enrichment claim against American Merchant because it does not contain facts supporting the second element, that American Merchant "knew of the benefit and should reasonably have expected to repay" Morse. *Id.* Even if Morse conferred benefits on American Merchant by securing the ARC grant and the TVA electrical energy credit, the Complaint does not plausibly allege that American Merchant should have reasonably expected to pay Morse for his work to obtain those benefits. Rather, the allegation that "American Merchant had contracted with CNS, to locate a suitable building for

the textile plant to manufacture towels," indicates that American Merchant reasonably expected to pay CNS. Compl. ¶ 14, ECF No. 25.

The case of *James G. Davis Construction Corp. v. FTJ, Inc.*, 841 S.E.2d 642 (Va. 2020), cited by plaintiff, is unhelpful. There, the court concluded that a general contractor should have reasonably expected to pay a subcontractor's supplier for materials. *Id.* at 650-52. That finding turned on the general contractor's unordinary practice of processing payments directly to the supplier after the subcontractor, the usual intermediary between them, became financially strained. *Id*. at 646, 651. But the Complaint alleges no such direct payment arrangement here. Indeed, the Virginia Supreme Court "emphasize[d] the limited scope of [its] decision" and reiterated that "[i]n ordinary circumstances, a supplier of labor or materials to a subcontractor will not be able to obtain a judgment against an owner or a general contractor." *Id*. at 651. This case does not fit within that narrow exception. The Complaint thus fails to state a cognizable claim of unjust enrichment.

## IV.

For the foregoing reasons, it is **ORDERED** that the defendants' Motions to Dismiss Second Amended Complaint, ECF Nos. 26, 28, are GRANTED, and the plaintiff's action is DISMISSED.

A separate judgment will be entered.

ENTER: November 30, 2020

/s/ JAMES P. JONES
United States District Judge